## Ratliff v. St. Paul Fire & Marine Insurance Company.

(Decided February 24, 1925.)

### Appeal from Pike Circuit Court.

1.  Insurance—Insurer Held Not Liable on Fire Policy where Check Given for Cash Premium was Dishonored.—Where insured property is destroyed by fire before insured receives notice that check given by him for cash premium has been dishonored, which notice demands return of policy, insurance company is not liable.

2.  Insurance—Statement in Letter Notifying Insured of Dishonor of Premium Check Held Not Binding Because Without Considera-

tion.—Statement in letter notifying insured that check given for cash premium had been dishonored, and demanding return of policies, "These policies will become null and void five days from receipt by you of this notice," held at most a promise without consideration to insure for five days, and not binding.

DAUGHERTY & BARRETT for appellant.

HARMAN, FRANCIS & HOBSON, F. M. DRAKE, and BRUCE, BULLITT & GORDON for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

On April 11, 1922, appellee, St. Paul Fire and Marine Insurance Company, issued to appellant, Roy Ratliff, a fire insurance policy insuring him for one year against loss or damage by fire, not to exceed $1,500.00, to a stock of merchandise. The premium was $38.25, for which appellant gave appellee his check. The check was deposited the following day, and in the usual course of business was presented to the bank on which it was drawn for payment. The check was dishonored and returned to appellee marked "insufficient funds." It thereupon wrote appellant a letter advising him that his check had been dishonored and directing that he return the policy, with advice that immediately upon its receipt the dishonored check would be mailed to him. The letter contained no suggestion that appellant might have further time in which to pay the premium and made no suggestion that appellee considered appellant indebted to it by having given the check or accepted the policy and made no attempt to collect or demand for payment of the check. Before the letter reached appellant, as was stated in his petition, the stock of goods burned. Appellant made demand and submitted proof of loss under the policy, which appellee declined to pay, and this litigation resulted. At the close of appellant's testimony the trial court took the case from the jury and entered a judgment dismissing appellant's petition. This appeal is prosecuted from that judgment.

There is no controversy as to the facts, and a pure question of law is presented by the appeal. Is an insurance company bound on a policy issued and delivered by it for a cash permium if the check given by the insured for the premium when presented in due course for payment is dishonored and a fire occurs destroying the prop-

erty insured before notice by letter, promptly written, that the check has been dishonored and a demand for the return of the policy made by the insurer reaches the insured? A different state of case would be presented if appellee, upon being notified of the dishonor of the check, had then sought to collect the amount of the premium from appellant. That would have been its recognition that the check was accepted in payment of the premium and that it issued the policy not for cash but for the evidence of debt represented by the check. Appellee's contention is that since this was a cash transaction and the check was accepted and the policy issued with that understanding, it was incumbent upon appellant to make the check good when presented for payment; and that upon dishonor of the check the consideration for the insurance policy failed and hence it was void. It insists, therefore, that it is not liable for the fire loss that followed.

Under the head of Payment by Checks, in 30 Cyc., page 1207, it is written:

"The acceptance by the creditor of a check without regard to whether it is the check of the debtor or of a third person does not constitute payment unless it is agreed that it shall be taken as an absolute payment."

The rule with reference to checks as payment is thus written in 21 R. C. L., page 60:

"With the exception of a few jurisdictions, the authorities are unanimous in supporting the rule that the giving of a bank check by a debtor for the amount of his indebtedness to the payee is not in the absence of an express or implied agreement to that effect a payment or discharge of the debt, the presumption being that the check is accepted on the condition that it shall be paid and the debt is not discharged until the check is paid or the check is accepted at the bank at which it is made payable."

Under the head of Sales, with reference to the payment of the purchase price by check, the rule is thus written in 23 R. C. L., page 1388:

"The acceptance of a buyer's check is not regarded as payment but only as conditional payment, and if the check is dishonored on due presentation

the seller's right to reclaim the property is not lost."

Under the same heading, in 35 Cyc., page 329, with reference to payment by check, the rule is thus written:

"So if the seller delivers on an understanding express or implied that he is to receive immediate payment or security he may reclaim the goods, or if he delivers on payment by check in lieu of cash and the check is dishonored, he may reclaim the property."

In Carter & Company v. Richardson & Company, 22 K. L. R. 1204, this court said:

"The giving of a check is not of itself a payment of a debt unless the parties expressly agreed that it should be so accepted (which is not this case). (18 Am. & Eng, Enc. of Law, 158; Bailey v. Robinson, 14 K. L. R. 670, Sup. Ct.)"

In Walls v. Home Insurance Company of New York, 114 Ky. 611, appellant contended that his having mailed a check for the full amount of the premium due was in law a payment. The contention was rejected for the following reasons:

"(1) It was not pleaded that the premium had been paid; (2) it was not shown that the appellee's agent received or accepted the check in payment; (3) the check was not in fact paid nor presented to the bank upon which it was drawn; nor (4) did appellant have at the time or any time thereafter before the fire enough funds in the bank to his credit to have paid the check."

In accord with the foregoing general principles, and considering the case now before us in their light, and in the light of the facts of the transaction, it would seem that by the insurance policy issued to appellant, appellee insured him against loss to his stock of goods by fire in consideration of the amount of the premium paid in cash. Appellant, in payment of the premium, gave appellee his check. Upon presentation the check was dishonored. As soon as appellee received notice of that fact it demanded of appellant the return of the policy, holding the check

merely as evidence of its dishonor and nonpayment. It made no attempt to collect the check and took no steps to hold appellant liable to it for the amount of the premium under the contract of insurance. Under the circumstances, it seems perfectly obvious that the parties were dealing on a cash basis. The check was accepted not as an evidence of debt, but as cash. The policy was delivered not because appellant agreed to pay appellee the amount of the premium but because as the parties understood the transaction he had paid it the amount of the premium. When the check proved to be worthless the consideration failed and appellee so treated the transaction. We cannot see how the case is any different than it would have been if appellant had paid the amount of the premium in counterfeit bills.

It is insisted for appellant, however, that appellee by its agent put its own construction on the contract by the letter it wrote, and that under the terms of the letter written to him appellee acknowledged that the policy was in force and would not terminate until five days after receipt of the letter. The letter reads:

"We are today in receipt of your unpaid check in amount of $76.50, check having been returned to this agency from the bank marked 'insufficient funds.'

"Following the usual custom of all companies in cases of this kind, we are hereby officially notifying you of the election of the companies to cancel the policies recently issued to you, viz.:

St. Paul policy No. 7010,
Niagara policy No. 12058.

These policies will become null and void five days from the receipt by you of this notice. Please be so kind as to return each of the above named policies to this office in the enclosed envelopes, that we may complete our files. Immediately upon receipt of the policies we will forward you the unpaid check."

The letter, fairly interpreted, is no more and no less than a notice by appellee to appellant that the check given for the cash premium had been dishonored and proved worthless and that he, therefore, would take notice that the policy issued to him for same was likewise worthless. A different state of case would be presented if the letter had reached appellant before the fire occurred. Appellant's petition stated that the letter

reached him two days after the fire. In testifying about it he stated that it reached him "about the time of the fire," but did not state that it reached him before the fire. The allegation in the petition that the letter reached him two days after the fire was not controverted. Appellant did not claim in his testimony that the portion of the letter advising that the policy would become void five days after he received it misled him or caused him to delay in arranging for other insurance on his stock of goods. If the letter had been received by him before the fire and acting on the suggestion in the letter that the policy would protect him for five days after its receipt, appellant had failed to protect himself from fire loss by taking other insurance, an estoppel might have arisen against appellee. The policy contained the usual provision that either party might cancel it by giving five days' notice. Doubtless appellee's agent had that provision of the policy in mind when he wrote the letter. Consequently under the facts of this case it seems to the court that the portion of the letter advising that the policy would become void five days after appellant's receiving it plays no part at all. At most it can be considered only the gratuitous promise upon the part of appellee to keep appellant's property insured from the date the policy issued until five days after he received the letter. The promise was not supported by any consideration whatever and consequently appellee was not bound. To adopt appellant's contention would be to hold that the policy of insurance was binding on appellee from April 11th, the date it was issued, until five days after the letter written April 25th reached appellant, without any consideration whatever. The policy having been issued for a cash premium of $38.25, appellant having delivered and appellee having received his check as cash, it devolved upon appellant to have the funds in bank to meet the check when presented in due course for payment. His failure to do so resulted in a failure of consideration for the policy of insurance issued to him which rendered it void.

For these reasons the judgment herein is affirmed.