## Breathitt County Board of Education v. Cockrell et al.

(Decided May 5, 1931.)

O. H. POLLARD and R. L. POLLARD for appellant.

WILLIAMS & ALLEN and GRANNIS BACH for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

S. J. Cockrell was elected and acted as sheriff of Breathitt county for a term of four years, beginning the first Monday in January, 1925, and ending December 31, 1929. As such he was collector of the state and county revenues, which included the tax levied by the fiscal court of the county for the purpose of the common schools of the county for the year 1929; he, with the Fidelity & Guaranty Company of Maryland, as his surety, executed bond as required by section 4133, Ky. Statutes, conditioned as provided by law. Some time during the year 1930 (the date is not shown) he made a settlement as sheriff with the Breathitt county fiscal court for taxes levied by it for the common school funds of Breathitt county for the year 1929. It is alleged that by it he was indebted to the county board of education in the sum of $37,284.01, less credit of $28,535.55, leaving a balance due of $8,749.01, exclusive of interest and penalties. It is also alleged that by this settlement $12,749.01 was unpaid of the funds in his hands belonging to the appellant on January 20, 1930, and that he is chargeable with a penalty of 6 per cent. on this amount, amounting to $764.94. This action was filed against him and his surety to recover $8,749.01, and a penalty of $764.94. To prevent a recovery, Cockrell and his surety by answer aver that E. I. Dawkins was the elected, qualified, and acting treasurer of the Breathitt County board of educa-

tion, and that on the 18th day of January, 1930, Cockrell as sheriff, executed and delivered to him a check for $18,000 which he accepted, drawn on the Hargis Bank & Trust Company, payable to him as treasurer. He had at that time in this bank to his credit, and in his name as sheriff of Breathitt County, a greater sum than $18,000. Hawkins was at the time cashier of the Hargis Bank & Trust Company, and knew that Cockrell had to his credit in the bank, and in his name as sheriff of Breathitt county, a sum largely in excess of the amount of the check. They charge that on or about the 21st of January, Dawkins as such treasurer, without his knowledge or consent, changed the amount of the check from $18,000 to $10,000, cashed the $10,000 check, and received thereon the $10,000 as treasurer of the Breathitt county board of education and only gave him credit on the taxes due to it by the sum of $10,000. They say: "Dawkins as its treasurer had full right, power and authority to receive all money due from him and that the payment by the check of the $18,000.00 was a full and complete payment to the plaintiff of the amount." On the 6th day of February, 1930, the Hargis Bank & Trust Company was placed in the hands of the state banking commissioner, and has continuously been under his control for the purpose of liquidation. It is insolvent and will not pay its depositors; that at the time it ceased to engage in business on February 6, 1930, he had on deposit with it the sum of $8,000; that, by virtue of the delivery and the acceptance of the $18,000 check, this amount had been transferred to the county board of education. They aver that the $18,000 was so paid to the county board of education prior to January 20, 1930, and for this reason, Cockrell, as sheriff, was only chargeable with a penalty of 6 per cent. on $4,749.01 or $284.94. Cockrell and his surety in their pleading do not traverse the allegations of the petition in regard to his settlement with the fiscal court. The county board of education by reply traversed the answer, and further set out that the $18,000 check was changed by Dawkins to $10,000 under the direction of Cockrell, and that he, as treasurer, received of him only $10,000, and that he executed and delivered to Cockrell a receipt for only $10,000, which he accepted and retained. By appropriate pleadings these allegations were traversed. A trial was had by a jury, a verdict was returned for Cockrell and his surety, and judgment accordingly entered, from which this appeal is

prosecuted. A sharp conflict is made in the testimony of Cockrell and Dawkins as to what occurred between them relative to the changing of the check from $18,000 to $10,000, and the execution and delivery of the receipt therefor. According to our view this is immaterial. It is admitted that the treasurer of the county board of education only collected on the check the sum of $10,000, and executed and delivered a receipt therefor to Cockrell. The $18,000 check was not cashed nor receipted for. All of which was made known to Cockrell, at least at the time he received from the treasurer the receipt for the $10,000, whether it was the day the check was written or several days subsequent. He knew it was not accepted and cashed by Dawkins. The reasons it was not accepted and cashed are immaterial. It is immaterial whether he is correct in his statements, or the treasurer is correct in his explanation of the reasons it was not collected. The fact remains that it was not paid. This is the decisive fact.

In Carter & Co. v. Richardson & Co., 60 S. W. 397, 400, 22 Ky. Law Rep. 1204, the question of payment by check was considered. In discussing it we used this language:

"The giving of a check is not of itself a payment of a debt, unless the parties expressly agree that it should be so accepted." 18 Amer. & Eng. Cyc. of Law 158; Bailey v. Robinson, 14 Ky. Law Rep. 670.

In Walls v. Home Insurance Co. of N. Y., 114 Ky. 611, 71 S. W. 650, 652, 24 Ky. Law Rep. 1452, 102 Am. St. Rep. 298, the mailing of a check was relied upon as a payment in full. The reasons we assigned for rejecting this plea were stated in this language:

"(1) It was not pleaded that the premium had been paid; (2) it was not shown that appellee's agent received or accepted the check in payment; (3) The check was not in fact paid, nor presented to the bank upon which it was drawn; nor (4) did the appellant have at the time, or any time thereafter before the fire, enough funds in the bank to his credit to have paid the check." See, also, Ratliff v. St. Paul Fire & Marine Insurance Co., 207 Ky. 492, 269 S. W. 546.

In 21 R. C. L. sec. 63, page 64, the rule is aptly stated:

"The fact that a check or draft was received in absolute payment may be established by showing an express agreement to that effect, or by showing such circumstances as will satisfy the mind that such was the understanding of the parties at the time the check was taken. There is no presumption that a creditor takes a check in absolute payment arising from the mere fact that he accepts it from the debtor; and giving a receipt acknowledging payment of the debt at the time the check is delivered does not evidence an agreement to accept the check as absolute payment. . . ."

In Lloyd Mortgage Co. v. Davis, 51 N. D. 336, 199 N. W. 869, 36 A. L. R. 465, the Supreme Court of North Dakota announced the rule that,

"in the absence of special agreement to the contrary, the mere acceptance . . . of a cashier's check is not absolute, but merely conditional, payment, defeasible on the nonpayment of the check."

In State of Texas v. Tyler County State Bank (Tex. Com. App.) 277 S. W. 625, 627, 42 A. L. R. 1347, the applicable rule is well stated in this language:

"The term 'payment' is the discharge of an obligation by the delivery and acceptance of money or of something equivalent to money which is regarded as such at the time by the party to whom the payment is due. Cranston v. West Coast L. Ins. Co., 63 Or. 427, 128 P. 430; 6 Words and Phrases [First Series] p. 5247. In its broadest signification, 'payment' is satisfaction of an obligation. Manitou v. First Natl. Bank, 37 Colo. 344, 86 P. 78. To constitute 'payment' there must be a delivery by the debtor, or his representative, . . . of money or something accepted by the creditor as equivalent thereof with the intention on the part of the debtor to pay the debt and accepted as payment by the creditor. 30 Cyc. p. 1181. 'Payment' means full satisfaction as contrasted with an 'accord,' which involves the acceptance of something as satisfaction,

and 'release,' which is a conclusive acknowledgement of satisfaction. Robinson v. St. Johnsbury & L. C. R. Co., 80 Vt. 129, 9 L. R. A. (N. S.) 1249, 66 A. 814, 12 Ann. Cas. 1060. The term 'payment' means a payment in money, and, in order to constitute a payment, the debtor must give something either in money or something which is the equivalent of money. Commercially speaking, the term 'payment' relates to and is restricted to a payment in money.''

To constitute in law a payment by check, the check must be accepted and actually paid by the bank upon which it is drawn. Morrison v. Chapman, 155 App. Div. 509, 140 N. Y. S. 700; Cleve v. Craven Chemical Co., (C. C. A.) 18 F. (2d) 711-712, 52 A. L. R. 980; Kirby Planing Mills Co. v. Titus, 14 Ga. App. 1, 80 S. E. 18; First National Bank v. McConnell, 103 Minn. 340, 114 N. W. 1129, 14 L. R. A. (N. S.) 616, 123 Am. St. Rep. 336, 14 Ann. Cas. 396.

''With the exception of a few jurisdictions the authorities are unanimous in supporting the rule that the giving of a bank check by a debtor for the amount of his indebtedness to the payee, is not, in the absence of an express or implied agreement to that effect a payment or discharge of the debt, the presumption being that the check is accepted on the condition that it shall be paid and the debt is not discharged until the check is paid or the check is accepted at the bank at which it is made payable.'' 21 R. C. L. p. 60.

Viewing the case in the light of these general principles, and the admitted facts, it is perfectly plain that the delivery by Cockrell to the treasurer, and his receiving the $18,000 check, constituted no payment in law to the treasurer of the amount in excess of the $10,000 actually paid by the bank on the check. The sheriff may have been temporarily prejudiced by the alteration of the check without his knowledge or consent. After he received information of his so changing it before the bank went into the hands of a receiver, he had ample opportunity to protect himself against the changing of the check by the treasurer and the cashing of the $10,000 check, leaving $8,000 to his credit in the bank. At the

close of the evidence the parties each entered a motion for a directed verdict. The court overruled the motion of both, and refused to give it to either of them.

It is apparent from what we have said that the court erred in refusing to give a peremptory instruction to find the verdict for appellant. The issue as to the penalty to which the appellant was entitled was not submitted to the jury by the instructions given to it. No judgment was entered in reference to it. At least by the admissions in the answer it was entitled to recover a portion of the penalty sought in the petition. As the record is presented appellant is entitled to recover the amount alleged to be in the hands of the sheriff on January 20, 1930, with interest, and the penalty added.

Judgment reversed, and appellant granted a new trial consistent with this opinion.