## Hammond v. Sun Life Insurance Co. of Canada (two cases).

(Decided Nov. 3, 1933.)

JOHN S. MILLIKEN and W. R. PEEBLES for appellant.

PETER, LEE, TABB, KREIGER & HEYBURN and LAWRENCE B. FINN for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

Virgil D. Hammond, on May 3, 1928, took out two policies with the Sun Life Insurance Company of Canada, insuring his life in the sum of $5,000, for the benefit of his wife, Martha E. Hammond, in consideration of the payment in advance of premiums aggregating $133.25, and of the payment of a like amount quarterly thereafter on the 9th day of July, October, January, and April of each year. He made the payments due in July and October, 1928, and in January, 1929. By the terms of the policy he had a grace of one month to pay the premiums. The premiums due on April 9, 1929, were not paid when due, but on May 9th he mailed the company his check dated May 8th for the

amount. The company on receipt of the check mailed to Hammond its receipt for the premium. When the check was presented, payment was refused by the bank for lack of funds on deposit to the credit of Hammond. The company notified Hammond at once and he assured the company that the check would be honored if presented again. Upon this assurance the company presented the check a second time and payment was again refused on account of insufficient funds. The company on May 20th wrote Hammond that his check had been returned the second time and that the company had requested its bank to present the check once more, and, if it was not honored, then it would be necessary for the company to cancel the policies. The check was presented by the bank for the third time and it was again returned unpaid for the same reason. After the check had been returned unpaid for the third time, the company marked the policies canceled, and on May 23, 1929, gave written notice to Hammond by registered letter that his policies had been canceled due to his failure to pay the premiums due on April 9, 1929, or within the days of grace allowed under the policies or within the additional extension of time granted by the company and that his insurance was no longer in force and in order to reinstate the policies it would be necessary for him to furnish the company with satisfactory evidence of health and to pay the amount of the premiums in arrears with interest. Hammond made no reply to the letter of May 23d, and did not thereafter make application to the company for reinstatement of the policies or pay any part of the arrears of premiums. He died on June 28, 1929, and after his death, his widow brought these actions upon the policies to recover thereon. The policies contained these provisions:

"A grace of one month (not less than thirty days) is allowed for the payment of all premiums after the first, without interest charge, during which time the assurance shall continue in force. If death occur during the period of grace, the premium, if unpaid, shall be deducted from the amount payable hereunder.

"If any premium be not paid within the days of grace, this policy shall thereupon become void, subject however to the extended term assurance provision of Privilege VIII hereunder."

The extended term assurance, referred to, only applied after three full years' premiums had been paid. Here only one year's premiums had been paid. On the above facts, which were conceded on the trial, the circuit court dismissed the plaintiff's petition and she appeals.

It is insisted for the appellant that the acceptance of negotiable paper in payment of an insurance premium is binding on the parties and that the insurer accepting a check of the insured in payment of the premium during the period of grace and retaining the same and insisting on payment until after the grace period has expired cannot then cancel the policy. New England Mut. Life Insurance Co. v. Springgate, 129 Ky. 627, 112 S. W. 681, 113 S. W. 824, 19 L. R. A. (N. S.) 227, is relied on. In that case, after a note for the premium became due, the defendants' agent wrote the insured that unless the note was paid at once they would be compelled to return the note which would cancel the insurance. When the letter reached the insured's home, he was unconscious and died the next day, but after his death the widow remitted to the insurer the amount of the note. In that case there had been no election by the insurer to cancel the policy. Here a final election was made by the insurer to cancel the policy on May 23, 1929, and this was acquiesced in by the insured, who took no action on receipt of this letter and afterwards died on June 28th. New York Life Ins. Co. v. Evans, 146 Ky. 600, 143 S. W. 37, merely followed the first opinion in the same case. See New York Life Insurance Company v. Evans, 136 Ky. 391, 124 S. W. 376. The facts there were very materially different from the facts here in that there the insurer, instead of canceling the policy and so notifying the insured, had written a letter unconditionally demanding the payment of the note. To like effect is Ray v. Commonwealth Life Ins. Co., 184 Ky. 217, 211 S. W. 736. In Ratliff v. St. Paul Fire, etc., Co., 207 Ky. 492, 269 S. W. 546, the check given for the premium was dishonored and before the insured received notice that the check had been dishonored the property was burned. It was held that the company was not liable.

In this case the company, after the check was dishonored, twice at the insured's request, sent the check back for payment, and, when the third time the pay-

ment was refused, it elected to cancel the policy and notified the insured of its action. The fact that it retained the check instead of inclosing it to him in the letter is immaterial, for the reason that it retained the check to show the facts, as it had a right to do; for it had issued to the insured a receipt for the premium, which he held and it had a right to retain the dishonored check to show the fact, until he returned the receipt for the premium. The case of Veal v. Security Mutual Life Ins. Co., 6 Ga. App. 721, 65 S. E. 714, turned on essentially different facts. See Cogar Grain & Coal Co. v. McGee, 241 Ky. 485, 44 S. W. (2d) 551.

Judgment affirmed.